Rosenbaum v. Moller.

ROSENBAUM v. MOLLER.

(*Jackson.* April 22d, 1887.)

ASSIGNMENT, GENERAL. *Act of 1881 construed. Schedule. Description of property.*

The requirement of the Act of 1881, ch. 121, that "a full and complete inventory or schedule" of all the debtor's property shall accompany a general assignment for the benefit of creditors, is sufficiently complied with by annexing to the assignment a schedule, under oath, in the following words, to-wit:

"The entire stock of goods, wares, and merchandise in the storehouses, Nos. 79 and 79½ Beale Street, in the city of Memphis, * * * * * consisting of dry goods, boots, shoes, hats, caps, gentlemen's furnishing goods; clothing, notions, trunks, valises, counters, shelving, chairs, stoves, desks, one iron safe, and one mirror, in all to the value of about ($7,600) seventy-six hundred dollars; and choses in action of the party of the first part, directed in the within assignment to be collected by the trustee, being all due and owing by account."

Rosenbaum *v.* Moller.

Code cited: § 2733 (M. & V.), Acts 1881, ch. 121.

Case cited and distinguished: Hill, Fountain & Co. *v.* Alexander Bros., 16 Lea, 496.

---

FROM ,SHELBY.

---

Appeal from Chancery Court of Shelby County. H. T. ELLIOTT, Ch.

E. C. Moller made a general assignment for benefit of his creditors, under Act of 1881, ch. 121. Some of his creditors, conceiving it to be void for want of a sufficiently "full and complete inventory or schedule" of his property, as required by said act, attached the property assigned, on the ground that the assignment was for that reason void. Decree for complainants. Respondents appealed.

POSTON & POSTON, MILLER & GILHAM, for Complainants.

T. B. EDGINGTON for Respondents.

FOLKES, J. On the 10th day of January, 1887, E. C. Moller, a merchant doing business at Memphis, undertook to make a general assignment of all of his property for the benefit of all of his creditors.

After a recitation of his purpose, he conveys

to the assignee named "and his successors all of his [grantor's] property of every description, whereof a full and complete inventory or schedule is hereto annexed as a part hereof, marked 'Schedule A;' and said property hereby conveyed to said party of the second part, and specified in said Schedule A, contains all the property of every description of the said party of the first part."

Schedule A, referred to in the foregoing deed of assignment and attached thereto, is as follows:

"The entire stock of goods, wares, and merchandise in the store-houses Nos. 79 and 79½ Beale Street, in the city of Memphis, county of Shelby, State of Tennessee, consisting of dry goods, boots, shoes, hats, caps, gentlemen's furnishing goods, clothing, notions, trunks, valises, counters, shelving, chairs, stoves, desks, one iron safe, and one mirror, in all to the value of about ($7,600) seventy-six hundred dollars; and choses in action of the party of the first part, directed in the within assignment to be collected by the trustee, being all due and owing by account."

Then follows a list of the persons indebted to him, with a statement of the amount due by each. To all of which this jurat is appended:

"This day personally appeared before me M. T. Garvin, Deputy Clerk of the County Court of Shelby County, E. C. Moller, assignor in the foregoing deed of assignment, who, after being first duly sworn, says that the inventory or schedule

hereto attached contains a complete list of all his property.                    E. C. MOLLER.

"Subscribed and sworn to before me this 10th day of January, 1887.

"M. T. GARVIN, *D. C.*"

On the 12th of January, 1887, the attachment bill in this cause was sued out, wherein it is charged that "this conveyance or pretended assignment is and was void upon its face; for, while it purports to be made under the Act of 1881, Chapter 121, and makes a schedule of the property so conveyed, it utterly and entirely fails to comply with the statute to make and annex to the said assignment a full and complete inventory or schedule, under oath, of all his property of every description; said schedule being incomplete, not showing what specific property in detail was included therein, but described the property in a general, lumping way, without any inventory, full and complete, as required by the statute, for which reason said assignment is and was when made void, and operates to hinder, delay, and defraud creditors, and postpone them in the collection of their debt; and as such is fraudulent and void."

The bill was fully answered by the debtor and the assignee, setting up the facts, and claiming a compliance with the statute. Several similar bills were filed by sundry creditors, when an agreed case was made up, upon the determination of which all the cases were to depend.

From the agreed case as made it is manifest that

Rosenbaum *v.* Moller.

the assignment, together with the schedule as already set out, was acknowledged, sworn to, and filed in the proper office for registration on the 10th day of January; that the assignee qualified and took possession of the assigned property on the same day, and at once begun the taking of a minute inventory, occupying the 10th, 11th, and 12th of January, and which inventory was, on the 15th of February, sworn to by the assignee, and filed by him with the Clerk of the County Court, but which inventory has never been recorded in the Register's office.

The Chancellor on the agreed case sustained the attachment, upon the ground that the assignment was null and void, and had the effect to hinder, delay, and defraud the creditors of Moller. From this decree the defendants have appealed.

The contention here to sustain the ruling of the Chancellor is that the Act of 1881, now carried into the New Code at § 2733, wherein it is provided that "the debtor making a general assignment shall annex thereto a full and complete inventory or schedule, under oath, of all his property of every description," has not been complied with in this case.

It is insisted that the statute requires, and is imperative in such requirement, that a minute and detailed inventory of every article should have been annexed, such as was thereafter made out by the assignee; that nothing short of this will satisfy this mandatory statute; and lexicographers

42

are quoted to furnish the meaning of the words *full* and *complete*.

With this insistence we cannot concur. Giving to this statute all that can reasonably be claimed for it as mandatory, we are of opinion that in the case now before us there has been a substantial compliance with its terms and its spirit.

The fundamental rule of interpretation, applied to statutes mandatory as well as directory, is that words in a statute, if of common use, are to be taken in their natural and ordinary sense, without any forced or subtle construction to limit or extend their import; but the real intention, when accurately ascertained, will always prevail over the literal sense of the terms.

As was said by the present Chief Justice in delivering the opinion of the Court in *Hill, Fontain & Co.* v. *Alexander Bros.*, 16 Lea, 496, "the policy of the statute is to prevent fraud on the part of the conveying debtor by concealment of any of his estate; * * * it addresses itself to the sworn conscience of the debtor, and makes room for punishment for perjury. The debtor will not be allowed to escape such serious consequences of the enforcement of the law by a mere recital of his property without the commanded oath." To which we add that the *mere recital* of his property would not suffice even with the oath.

In the case at bar we have, as has already been seen, a schedule or inventory, full and complete, within the meaning of the statute. The stock of

goods, wares, and merchandise conveyed are enumerated and scheduled as consisting of "dry goods, boots, shoes, hats, caps, gentlemen's furnishing goods, clothing, notions, trunks, valises;" and the schedule continuing, embraces "counters, shelving, chairs, stoves, desks, one iron safe, and one mirror, in all to the value of $7,600," being the entire stock, etc., in Nos. 79 and 79½ Beale Street.

Surely it would be a forced and unnatural construction that would hold this an insufficient schedule within the meaning of the Legislature.

If we are to give the literal meaning of the terms *full* and *complete*, it is difficult to see where we could stop in requiring a compliance with the statute. Certainly in a large mercantile establishment it would seem unreasonable to expect every collar, cuff, sock, ladies' belt, corset, or yard of ribbon to be specified in the emergency attending usually the making of such an assignment. As is shown in this case, it required three days for the assignee to make such an inventory. It is manifest that if this failing debtor had closed his doors for three days in order to prepare an inventory, his creditors would have been upon him doubtless with attachments, and thus have defeated the very object of this statute, which was to prevent preferences and to secure, as far as possible, an equal distribution of the assets of an insolvent debtor. Nor in a conveyance embracing all of the grantor's horses, hogs, cows, now located in a certain barn situated on Blackacre, and duly sworn

to as embracing all his property, it would not do to say the conveyance was void under this statute, because, forsooth, he failed to designate the size, age, sex, color, or previous condition of servitude of each animal.

The case of *Hill, Fontain & Co.* v. *Alexander Bros.*, above referred to, is invoked as sustaining the contentions of counsel for the attaching creditors here. In that case the only question presented, and the only point adjudged, was the matter of the oath to the schedule, and it was held that *the oath* was absolutely necessary to the validity of the deed of assignment. With this holding we most heartily concur, and there is nothing in this opinion at variance therewith.

There must be a full and complete schedule of the property conveyed, verified by oath. The schedule in this case is in substantial compliance with this requirement.

The result is that the decree will be reversed, and bill dismissed at the cost of complainants.

Chief Justice Turney dissents.